**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-7417**

CLINTON SMITH,

                Petitioner - Appellant,

     v.

GERALD J. BRANKER, Administrator,

                Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   James C. Dever III, District Judge.  (5:09-hc-02082-D)

Submitted:  October 20, 2011      Decided:  January 13, 2012

Before KING, DAVIS, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Malcolm Ray Hunter, Jr., David Weiss, CENTER FOR DEATH PENALTY LITIGATION, Durham, North Carolina, for Appellant.  Clarence Joe DelForge, III, Assistant Attorney General, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Clinton Cebert Smith appeals the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (2006). The facts underlying Smith's convictions have been exhaustively recounted in the North Carolina courts. See, e.g., State v. Smith, 524 S.E.2d 28, 33-36 (N.C. 2000). In brief, Smith's ex-girlfriend, Sylvia Cotton, and their three children were poisoned with Di-Syston, a lethal organophosphate pesticide, in January 1996. One of the children, Britteny, died; Cotton and the other two children were hospitalized but eventually recovered. Smith was later convicted by a North Carolina jury of one count of first-degree murder and three counts of attempted first-degree murder. Although Smith initially received a capital sentence, it was reduced to life imprisonment after a state court determined that he is mentally retarded.

Following his convictions, Smith filed a motion for appropriate relief ("MAR") in state court, alleging, in pertinent part, that the State had violated Brady v. Maryland, 373 U.S. 83 (1963), and its progeny by failing to disclose the existence of a letter written by Dr. Darrell Sumner, a toxicologist whom the prosecution had consulted during its investigation of the case against Smith. The state MAR court rejected Smith's Brady claim, and the Court of Appeals of North

Carolina denied certiorari. Smith then filed his § 2254 petition for federal habeas corpus relief, which the district court dismissed. We granted a certificate of appealability, directing briefing on the issue of whether the State violated Brady and Giglio v. United States, 405 U.S. 150 (1972), in failing to disclose Dr. Sumner's letter to the defense. We now affirm.

This court reviews de novo a district court's denial of habeas corpus relief on the basis of a state court record. See Tucker v. Ozmint, 350 F.3d 433, 438 (4th Cir. 2003). Nevertheless, where the state court has adjudicated a petitioner's claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal court may grant a habeas petition only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2006).

In addressing Smith's Brady claim, the state MAR court correctly recognized:

3

> "There are three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

<u>State v. Smith</u>, No. 96-CRS-948 to -51, slip op. at 3 (N.C. Super. Ct. June 19, 2002) (the "MAR Decision") (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281 (1999)). That is, evidence is favorable not only when it would tend to exculpate the accused, but also when it can be used to impeach the prosecution's witnesses. <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985); <u>United States v. Trevino</u>, 89 F.3d 187, 189 (4th Cir. 1996). Evidence tending to impeach a witness for the State must be disclosed to the defendant if known to the prosecution. <u>See</u> <u>Giglio</u>, 405 U.S. at 153-55. Favorable evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34 (1995) (internal quotation marks omitted). A reasonable probability is one sufficient "to undermine confidence in the verdict." <u>Id.</u> at 435.

The letter that is the genesis of Smith's <u>Brady</u> claim was addressed to the manufacturer of Di-Syston, and a copy was sent to the prosecutor's office. In it, Dr. Sumner identified four areas of concern with the prosecution's theory that Smith

4

had introduced the pesticide to his victims by dissolving it in some Kool-Aid that they later drank. Dr. Sumner first observed that "[t]he time lapsed between ingestion and onset of symptoms seems unusually long." Second, he queried whether Di-Syston is soluble enough in water to produce a lethal dose in only "a couple of swallows." Third, he questioned whether the "tissue levels" recorded in Britteny's autopsy were sufficient to cause her death. And fourth, he wondered why the autopsy report omitted certain data pertaining to "acetylcholinesterase determinations."

In this appeal, Smith declines to pursue any argument with respect to the third and fourth concerns outlined in Dr. Sumner's letter. In fact, Smith concedes that Britteny's death was caused by Di-Syston poisoning. Nevertheless, Smith contends that, if he had known of Dr. Sumner's hesitations with respect to the time lapse and solubility issues identified in his letter, Smith would have pursued those issues more assiduously and hired an additional expert to further scrutinize them. In essence, Smith contends that he would have been able to raise enough uncertainty about precisely how the pesticide was introduced to the victims to support a theory that the poisonings were accidental. As a result, claims Smith, there is a reasonable probability that, had Dr. Sumner's letter been

5

disclosed to the defense, the jury would have returned verdicts of not guilty.

Having thoroughly reviewed the record and the parties' briefs, however, we cannot say that the state MAR court's adjudication of Smith's Brady claim resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court precedent, or that was based on an unreasonable determination of the facts. At bottom, the State was under no obligation to prove that Smith sprinkled Di-Syston into Kool-Aid as opposed to some other medium. On the contrary, the State needed only to prove that Smith acted with malice and with premeditation and deliberation. See State v. Coble, 527 S.E.2d 45, 46 (N.C. 2000). Given that Smith concedes that Di-Syston killed Britteny, Dr. Sumner's letter is material for Brady purposes only if further specificity about the particular carrier for the pesticide could implicate a third party or show that the victims were poisoned accidentally. Smith argues the latter, contending that, if the State failed to prove definitively the precise medium by which the Di-Syston was introduced to the victims, the jury could have concluded that the pesticide may have been introduced accidentally. Nevertheless, Smith never identifies precisely what type of accident he envisions as plausible. Indeed, we agree with the state MAR court that the evidence that Smith introduced the

6

pesticide into Cotton's home for the express purpose of perpetrating lethal harm is "overwhelming," see MAR Decision 19, regardless of any residual lack of clarity regarding the particular medium by which the pesticide was introduced to the victims.

At the very least, it was certainly within the bounds of reason for the state MAR court to conclude that the nondisclosure of Dr. Sumner's letter did not deprive Smith of a verdict that is worthy of confidence. See Kyles, 514 U.S. at 435. Accordingly, we affirm the district court. We deny Smith's pending motion to appoint counsel. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument will not aid the decisional process.

AFFIRMED